998 P.2d 1064

**PHILADELPHIA INDEMNITY INSURANCE COMPANY, Plaintiff–Counterdefendant–Appellee,**

**v.**

**Ana BARERRA, individually and as Personal Representative of the Estate of Melvin Sanchez, deceased; Mario Huerta and Lucia Huerta, husband and wife, individually and as the natural parents of Pedro Huerta, a minor child; Juan Eduardo Quintero–Lopez and Michelle Quintero–Lopez, husband and wife, Defendants–Counterclaimants–Appellants.**

**No. 1 CA–CV 98–0261.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 5, 1999.

Review Granted May 18, 2000.

Goldberg & Osborne by John E. Osborne, Tucson, Attorneys for Appellants.

Warner Angle Roper & Hallam Plc by Charles R. Hallam and Jerome K. Elwell, Phoenix, Attorneys for Appellee.

OPINION

GARBARINO, Judge.

¶1 Ana Barerra, the Estate of Melvin Sanchez, the Huertas, and the Quintero–Lopezes (Appellants) appeal from the grant of summary judgment in favor of Philadelphia Indemnity Insurance Company in a declaratory judgment action. Appellants also appeal the denial of their motion for summary judgment. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 On April 23, 1993, Juan Eduardo Quintero–Lopez rented a car from Value Rent–A–Car. At the time of the rental, Quintero–Lopez signed Value's rental agreement and an addendum thereto, and received a brochure explaining the various optional coverages available. Quintero–Lopez purchased supplemental liability insurance (SLI) issued by Philadelphia Indemnity Insurance Company, with policy limits equal to the difference between the primary insurance limits provided by Value and $1,000,000.

¶3 Later that day, while under the influence of alcohol, Quintero–Lopez crashed the rental car into a stopped semi-tractor trailer. The accident killed Melvin Sanchez, a passenger in the rental vehicle, and severely injured another passenger, Pedro Huerta. Ana Barerra, Sanchez's estate, and Huerta filed a personal injury suit against Quintero–Lopez, alleging that he had negligently and recklessly operated the rental vehicle at the time of the accident, and that Value provided primary coverage to Quintero–Lopez. In August 1995, the trial court entered judgment in that action against Quintero–Lopez: Pedro Huerta was awarded $435,000 for his personal injury claim and Ana Barerra was awarded $270,000 for the wrongful death of her son, Melvin Sanchez. Value tendered its policy limits of $30,000 to the plaintiffs and, ultimately, the parties entered into a *Morris*[1] agreement. As part of the agreement, Quintero–Lopez assigned all of his claims against Philadelphia, if any, to the plaintiffs in that underlying action.

¶4 Meanwhile, Philadelphia had filed a declaratory judgment action seeking a determination that it had no duty to defend or satisfy any judgment arising out of the accident in question because Quintero–Lopez had voided the rental agreement by breaching the provision against drunk driving. Appellants answered Philadelphia's complaint and counterclaimed, alleging breach of contract. Cross motions for summary judgment were filed. The trial court, without explanation, denied Appellants' motion for summary judg-

ment and granted summary judgment in favor of Philadelphia.

¶5 Appellants appeal from the denial of their summary judgment motion and from the grant of summary judgment in favor of Philadelphia. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B) (1994).

## ISSUES

1. Is a DUI exclusion in a SLI policy void as against public policy?
2. Was Philadelphia's DUI exclusion unconscionable or contrary to the reasonable expectations of the insured?
3. Did Philadelphia waive its policy defenses by failing to timely deny coverage?

## DISCUSSION

I. *Standard of Review*

¶6 On review of summary judgment, this Court views the facts and the inferences drawn therefrom in the light most favorable to the party against whom judgment was entered. *See AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993). "[W]e consider whether there exist genuine issues of material fact and whether the trial court correctly applied the substantive law." *Jordan v. Burgbacher*, 180 Ariz. 221, 225, 883 P.2d 458, 462 (App.1994). Insurance policies, which are construed as contracts, are interpreted as a matter of law. *See Arizona Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 231, 928 P.2d 653, 655 (App.1996). Questions of law are reviewed by this Court de novo. *Do by Minker v. Farmers Ins. Co. of Arizona*, 171 Ariz. 113, 115, 828 P.2d 1254, 1256 (App.1991).

II. *A DUI Exclusion in a SLI policy is not Void as Against Public Policy.*

¶7 Appellants argue that as a matter of public policy, DUI exclusion clauses in excess carrier policies are unconscionable and, as such, void. However, Appellants fail to cite any Arizona cases to support their

---

**1.** *United Servs. Auto Ass'n v. Morris,* 154 Ariz.   113, 741 P.2d 246 (1987).

position. In fact, Arizona case law holds to the contrary; exclusionary clauses in insurance policies, applicable to excess coverages, are valid and enforceable. *See Arceneaux v. State Farm Mut. Auto. Ins. Co.*, 113 Ariz. 216, 217–18, 550 P.2d 87, 88–89 (1976) (holding that a household exclusion in a primary automobile insurance policy was valid, so long as the minimum levels of Arizona's Financial Responsibility Act were met). Other jurisdictions have rejected this argument as well. *See, e.g., Philadelphia Indem. Ins. Co. v. Carco Rentals, Inc.*, 923 F.Supp. 1143 (W.D.Ark.1996) (holding that a DUI exclusion in an excess liability coverage policy did not violate Arkansas' public policy); *Hertz Corp. v. Home Ins. Co.*, 14 Cal.App.4th 1071, 18 Cal.Rptr.2d 267 (1993) (holding that because excess liability coverage is entitled to broader exemptions and exclusions than primary coverage, a conspicuous and unambiguous DUI exclusion is enforceable therein); *Public Employees Mut. Ins. Co. v. Hertz Corp.*, 59 Wash.App. 641, 800 P.2d 831 (1990) (holding that the DUI exclusion in the rental car company's liability policy did not violate Washington's public policy because the prohibitive exclusion was directly related to an increased risk incurred by the rental company as a self-insurer). Additionally, section 28–4009(D) of the Arizona Revised Statutes Annotated specifically excludes excess liability carriers from the provisions of Arizona's Financial Responsibility Act:

> D. A policy that grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and the excess or additional coverage is not subject to this chapter. With respect to a policy that grants the excess or additional coverage, the term "motor vehicle liability policy" applies only to that part of the coverage that is required by this section.

A.R.S. § 28–4009(D) (Supp.1998).

¶ 8 In their reply brief, Appellants seek to distinguish *Arceneaux* on the grounds that it failed to address other public policy considerations that are present in this case, including the policy that Arizona's Uninsured Motorists Act was designed to protect citizens injured by uninsured drivers. We find this distinction to be inconsequential, and we reject Appellants' argument that any DUI exclusion found in an excess liability insurance policy is void as against public policy.

¶ 9 Alternatively, Appellants suggest that if we accept the holding of *Arceneaux*, we should overrule it on public policy grounds. We have no authority, however, to "overrule, modify, or disregard" the decisions of the Arizona Supreme Court. *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993). "Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court." *Id.*

III. *Philadelphia's DUI Exclusion is not Unconscionable or Contrary to the Reasonable Expectations of the Insured as a Matter of Law.*

¶ 10 Appellants next argue that this particular rental contract is an unenforceable contract of adhesion because it is unconscionable and does not meet the reasonable expectations of the insured. We disagree.

¶ 11 On the back of the one page, double-sided rental agreement, under the heading *"PROHIBITED USE OF CAR,"* it states in part:

> I will not use or permit the car to be used for an illegal purpose such as illegal transportation of persons, drugs, or contraband, by anyone under the influence of alcohol or other intoxicants, such as drugs.... If the car is obtained through fraud or misrepresentation or used in violation of this Agreement, I understand that my rental will be terminated and LDW, PAC, no fault and all liability insurance protections are void (unless otherwise prohibited by the laws of the State where I rent the car).

On the front side of the rental agreement, it states in a small font and bolded:

> ANY BREACH OF THIS RENTAL AGREEMENT, SPECIFICALLY ANY VIOLATION OF ANY CONDITION(S), RESTRICTION(S), AND/OR TERM(S) OF THE RENTAL AGREEMENT, RENDERS ALL INSURANCE COVERAGE AND THE LOSS DAMAGE WAIV-

ER, EVEN IF ACCEPTED AND PAID FOR BY LESSEE, *NULL AND VOID.*

Also on the front side, in a small font and bolded, it states:

I HAVE READ AND I UNDERSTAND ALL OF THE CONDITIONS, RESTRICTIONS AND TERMS OF THIS RENTAL AGREEMENT BOTH FRONT AND BACK AND I AGREE TO BE BOUND BY SAME.

On the addendum to the rental agreement, where Lopez agreed to purchase the SLI, it states:

ASK YOUR RENTAL SALES AGENT FOR ADDITIONAL INFORMATION ON PROVISIONS AND EXCLUSIONS.

Further down, Quintero–Lopez signed his name beneath the paragraph, stating:

I have read this addendum and agree to its terms and conditions. If there are any differences between the rental agreement and this addendum, I understand that this addendum supersedes the rental agreement and will be controlling.

¶ 12    To support their unconscionability argument, Appellants point to the contract's lack of readability and its misleading nature. We cannot say, however, that this contract presents a case of either unfair surprise (procedural unconscionability) or overly harsh terms (substantive unconscionability). *See, e.g., Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 88–89, 907 P.2d 51, 57–58 (1995). Therefore, the trial court did not err in granting summary judgment in favor of Philadelphia on this ground. *See Maxwell,* 184 Ariz. at 87, 907 P.2d at 56 ("[T]he determination of unconscionability is to be made by the court as a matter of law.").

▮ ¶ 13    Even if a contract is not unconscionable, it may be unenforceable if it does not meet a party's "reasonable expectations." *Maxwell,* 184 Ariz. at 88, 907 P.2d at 57 (" '[R]easonable expectations' and unconscionability are two distinct grounds for invalidating or limiting the enforcement of a contract...."). The "reasonable expectations" doctrine serves to prohibit the enforcement of unusual, bizarre, or oppressive standard contract limitations. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins.*

*Co.,* 140 Ariz. 383, 391–92, 682 P.2d 388, 396–97 (1984).

¶ 14    In *Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 742 P.2d 277 (1987), the Arizona Supreme Court held that unambiguous boilerplate terms in standardized insurance contracts would not be enforced in a limited number of situations:

1.    Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in the light of the objective, reasonable expectations of the average insured;

2.    Where the insured did not receive full and adequate notice of the term in question, *and* the provision is either unusual or unexpected, or one that emasculates apparent coverage;

3.    Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;

4.    Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Id.* at 272–73, 742 P.2d at 283–84 (citations omitted).

▮ ¶ 15    First, we find that the contract terms here could easily be understood by the average customer checking coverage. Driving under the influence of drugs or alcohol was clearly a prohibited use under the *"PROHIBITED USE OF CAR"* provision that served to void the contract. The rental agreement lends itself to no other interpretation. By executing the agreement and the addendum, Quintero–Lopez represented that he read, understood, and assented to its terms and conditions.

¶ 16    Second, Quintero–Lopez received adequate notice of this prohibitive provision. He concedes that he rented cars continuously from Value from February 25, 1993 through April 23, 1993, and received eight separate, identical rental contracts for the eight rentals. Each time he purchased SLI coverage,

he could have read the agreement to ascertain whether he would be afforded coverage if he caused an accident while driving under the influence. Likewise, it cannot be said that this provision emasculated apparent coverage. Rather, it served to void coverage in the event that the insured drove while intoxicated, a reasonable contract term.

¶ 17 Finally, there was no evidence presented that Philadelphia induced Quintero–Lopez to believe that he would be covered if he drove while intoxicated. Value knew at the time that it rented Quintero–Lopez the car on April 23, 1993 that he had previously been arrested for driving a Value rental car while under the influence. Quintero–Lopez argues that this knowledge was imputed to Philadelphia based on a principal-agency relationship. He contends that because Philadelphia allowed Value to sell him SLI coverage following the arrest, it then created a reasonable expectation of coverage for a DUI-induced accident on this occasion. There is no indication in the record that Philadelphia knew of Quintero–Lopez's earlier DUI-related accident when Value sold the subsequent SLI policy.

¶ 18 We agree with the trial court's grant of summary judgment because, as a matter of law, it was not reasonable for Quintero–Lopez to expect liability coverage for an accident that occurred while he was under the influence. *See Gordinier,* 154 Ariz. at 273–74, 742 P.2d at 284–85 (holding that the policy provisions at issue were contrary to the reasonable expectations of the insured as a matter of law).

### IV. *Timeliness of Philadelphia's Reservation of Rights*

¶ 19 Appellants maintain that Philadelphia should have been estopped from denying coverage because it agreed to defend the case jointly with Value in April 1993, without reserving its policy rights in a timely manner. While it is true that "[a]n unconditional defense waives the insurer's right to deny coverage," *Anderson v. Martinez,* 158 Ariz. 358, 362, 762 P.2d 645, 649 (App.1988), we adopt the general rule that an excess carrier's duty to defend, as a matter of law, does not arise until after the primary carrier's coverage has been exhausted. *See generally St. Paul Fire and Marine Ins. Co. v. Children's Hosp. Nat'l Med. Ctr.,* 670 F.Supp. 393, 402 (D.C.Cir.1987) (holding that an insurer who was both the primary and excess carrier had no duty to defend in its capacity as an excess carrier at the time it assumed the defense under the primary policy); *Phoenix Ins. Co. v. United States Fire Ins. Co.,* 189 Cal.App.3d 1511, 1528, 235 Cal. Rptr. 185 (1987) (holding that an excess carrier has no duty to defend until primary coverages are exhausted); *State Farm Fire & Cas. Co. v. Jioras,* 24 Cal.App.4th 1619, 1626, 29 Cal.Rptr.2d 840 (1994) (same).

¶ 20 Here, the underlying accident occurred on April 23, 1993. Philadelphia did not receive a proper tender of the defense of the underlying litigation until April 17, 1995. Its duty to defend arose on that date. Philadelphia timely denied coverage under its SLI policy on May 16, 1995, thirty days later. We therefore sustain the trial court's grant of summary judgment in favor of Philadelphia on this issue.

### CONCLUSION

¶ 21 Accordingly, we affirm the trial court's grant of summary judgment in favor of Philadelphia and its denial of Appellants' motion for summary judgment.

CONCURRING: REBECCA WHITE BERCH, Judge, and SUSAN A. EHRLICH, Judge.