IN THE COURT OF APPEALS
STATE OF ARIZONA



FILED BY CLERK

OCT 29 2004

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| ALEX ORFALY, JANET GEORGE, HANNAH ALBRECHT, and EDWARD REID, | ) ) ) ) | 2 CA-CV 2003-0153 DEPARTMENT B |
| | ) | O P I N I O N |
| Plaintiffs/Appellants, | ) ) | |
| v. | ) ) | |
| THE TUCSON SYMPHONY SOCIETY, a non-profit corporation, and THE TUCSON SYMPHONY ORCHESTRA MUSICIANS' ORGANIZATION, a chapter of the International Guild of Symphony, Opera and Ballet Musicians, | ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20012811

Honorable John M. Quigley, Judge
Honorable Deborah Bernini, Judge

AFFIRMED

---

Ellinwood, Langley & Plowman, LLP
  By Ralph E. Ellinwood                                                      Tucson

    and

Law Office of Bruce A. Burke, P.C.
  By Bruce A. Burke                                                          Tucson
                                                  Attorneys for Plaintiffs/Appellants

Fennemore Craig
  By Erwin D. Kratz

Tucson
Attorneys for Defendant/Appellee
The Tucson Symphony Society

Snell & Wilmer
  By James K. Mackie and Erica K. Rocush

Tucson
Attorneys for Defendant/Appellee
The Tucson Symphony Orchestra
Musicians' Organization

P E L A N D E R, Chief Judge.

¶1      Appellants Alex Orfaly, Janet George, Hannah Albrecht, and Edward Reid appeal from the trial court's grant of summary judgment in favor of appellees Tucson Symphony Society (TSS) and Tucson Symphony Orchestra Musicians' Organization (TSOMO) and from the trial court's denial of appellants' various post-judgment motions. Appellants, symphony musicians, sought recovery of treble damages under A.R.S. § 23-355 for allegedly unpaid wages, claiming they were entitled to all of their outstanding annual salary following their last performance of the symphony season. They also sought a judgment declaring invalid a twelve-month payment provision in the master labor agreement (MLA) between TSS and TSOMO. The trial court ultimately ruled in favor of appellees and also awarded attorney fees to them under A.R.S. § 12-341.01(A). Finding no reversible error, we affirm.

2

**BACKGROUND**

¶2        Although the pertinent facts are essentially undisputed, in reviewing a grant of summary judgment, "we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, 49 (App. 1998). Appellants were salaried musicians employed by TSS for the 2000-01 and 2001-02 seasons who worked under individual contracts that incorporated the terms of the MLA between TSS and TSOMO.[1] The MLA provides for payment of salaries to musicians on a twelve-month basis, with their annual salaries paid biweekly over twenty-six pay periods, and defines the symphony season as beginning September 1 and ending August 31 of each year. Musicians are not required to perform after the last engagement in June and not at all in July or August.

¶3        The last performance of the 2000-01 season was on May 11, with the coinciding pay period ending on May 25, 2001. The final performance of the 2001-02 season was on May 24, 2002, and the pay period ended that day. Appellants were paid in full by the end of August for each season in accordance with the MLA. Appellants, however, signed their 2001-02 individual contracts under protest, complaining that this pay structure violated state law. They took that complaint to TSOMO, the sole and exclusive bargaining agent for all TSS musicians.

---

[1]Under the MLA, a salaried musician is "[a] contracted [Tucson Symphony Orchestra] musician paid a flat annual salary over 26 pay periods and offered health benefits by the Society."

¶4　　　　The MLA provides a grievance and arbitration procedure. In pertinent part, it states:

> All questions, complaints or disputes concerning the interpretation or application of any provision of this Agreement will be presented in writing by the Union to the Executive Director of the Symphony or his/her designee within 90 days of the event giving rise to the question, or the same will be deemed waived.

TSOMO did not submit appellants' grievance in writing to the Executive Director, but on May 31, 2001, TSOMO presented the complaint to TSS at a regular meeting between TSS management and TSOMO representatives. After discussing the matter, TSS and TSOMO determined that the MLA's twelve-month payment provision was legal. TSOMO considered the matter resolved and did not take any further action.

¶5　　　　Appellants then filed this action, seeking recovery of wages, treble damages, and a declaratory judgment that the twelve-month payment provision violated A.R.S. § 23-351(C). Appellees moved for dismissal of the complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. The trial court (J. Quigley) denied those motions, despite finding "nothing in the individual contracts or the [MLA] that is invalid under state or federal law."

¶6　　　　More than one year later, appellants having conducted no discovery and the discovery deadline having passed, TSS and TSOMO moved for summary judgment on multiple grounds. In granting the motions on all grounds raised, the trial court ruled that the MLA's twelve-month payment provision did not violate state law; § 301 of the Labor

4

Management Relations Act (the Act), 29 U.S.C. § 185(a), preempted appellants' claims; appellants had been paid according to their contract; and TSOMO had contractual authority to determine what claims to submit to formal arbitration. The trial court also awarded all of appellees' requested attorney fees pursuant to § 12-341.01(A). This appeal followed the trial court's entry of formal judgments and denial of appellants' post-judgment motions under Rule 59, Ariz. R. Civ. P., 16 A.R.S., Pt. 2, for a new trial and to amend the judgments, and for relief under Rule 60(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2.

**DISCUSSION**

**I. Summary judgment ruling**

¶7 Appellants first contend the trial court erred in granting summary judgment on their claim that the MLA violates § 23-351(C). In pertinent part, that statute provides: "Each employer shall, on each of the regular paydays, pay to the employees, . . . all wages due the employees up to such date." Appellants argue TSS violated that statute by paying them in twenty-six pay periods over twelve months, pursuant to the MLA, rather than paying the balance of their wages for the season at the end of May, when their performance obligations ended.

¶8 Conversely, appellees argue the MLA's twelve-month payment provision is legal and enforceable and, therefore, the trial court correctly found no violation of § 23-351(C). Appellees also argue the federal Act preempts appellants' state-law claims. We review de novo the trial court's summary judgment ruling and related issues of statutory and

5

contract interpretation. *See Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003); *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, ¶ 6, 33 P.3d 518, 521 (App. 2001). "We will affirm [a summary judgment] if the trial court's ruling is correct on any ground." *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, ¶ 6, 20 P.3d 1158, 1162 (App. 2001).

### A. State law wage claim

¶9 As noted above, § 23-351(C) requires employers to pay to employees "on each of the regular paydays . . . all wages due the employees up to such date." In support of their argument that TSS violated that statute, appellants rely in part on A.R.S. § 23-350(5), which defines "[w]ages" as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." Appellants argue that the balance of their wages was due when they completed their performance obligations each May and that thereafter they no longer were rendering "labor or services" in return for "nondiscretionary compensation." They further contend that, despite the MLA's "twelve month pay out scheme," they "desire[d] to be paid immediately following completion of their work under the law" and that "their wishes must be honored." We find no such meaning in § 23-351(C).

¶10 In interpreting statutes, "[w]e focus first on the statutory wording and, if it is ambiguous or inconclusive, we consider the statute's 'context, subject matter, historical

background, effects, consequences, spirit, and purpose.'" *Bothell*, 192 Ariz. 313, ¶17, 965 P.2d at 53, *quoting Mailboxes, Etc. v. Indus. Comm'n*, 181 Ariz. 119, 122, 888 P.2d 777, 780 (1995). We find the language of § 23-351(C) clear: All employers must pay, on each pay day, all "wages" that are then "due" up to such date. The statutory definition of "wages" is based on compensation that an employee has a reasonable expectation to be paid. § 23-350(5). That compensation can be determined by "time, task, piece, commission or other method of calculation." *Id*.

¶11 Through the MLA, TSS and its musicians agreed that compensation would be paid over a twelve-month period. Nothing in the language of §§ 23-351(C) or 23-350(5) prevents such an agreement. *Cf. Swanson v. The Image Bank, Inc.*, 206 Ariz. 264, ¶ 12, 77 P.3d 439, 443 (2003) ("Generally speaking, . . . parties do have the power to determine the terms of their contractual engagements," particularly when the parties have relatively equal bargaining power); *Southwest Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (App. 1992) ("If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires."); *Villegas v. Transamerica Fin. Servs., Inc.*, 147 Ariz. 100, 103, 708 P.2d 781, 784 (App. 1985) ("Courts have no right to remake contracts to comport with some unspecified notion of fairness nor to refuse enforcement on that ground.").

¶12 Moreover, neither the record nor the law supports any contention that appellants reasonably expected to be paid in a manner different than that described in the contract. *See Consumers Int'l, Inc. v. Sysco Corp.*, 191 Ariz. 32, 38-39, 951 P.2d 897, 903-04 (App. 1997) (plaintiff's "reasonable expectations" theory did not preclude summary judgment when parties' negotiated contract was not based on unequal bargaining power and contained explicit no-cause termination provision of which parties were aware); *cf. Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, ¶ 12, 21 P.3d 395, 400 (2001), *quoting Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 394, 682 P.2d 388, 399 (1984) ("First announced in *Darner*, the doctrine of reasonable expectations relieves a party from 'certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.'").

¶13 In sum, § 23-351(C) required no "wages" beyond those paid by TSS, in accordance with the MLA, to be "due" at the close of the musicians' performance requirements in May of each year. Because we find the language of the statutes in question clear, we need not address appellants' arguments concerning the purposes or underlying policies of § 23-351(C). *See State v. Fell*, 203 Ariz. 186, ¶ 9, 52 P.3d 218, 221 (App. 2002) (when statutory language is clear, "no further inquiry is required"). The MLA's twelve-

month payment provision does not violate Arizona law, and the trial court properly granted summary judgment in favor of appellees on that basis.[2]

## B. Contractual authority of TSOMO

¶14     Appellants also contend the trial court erred in ruling that TSOMO had contractual authority to determine what claims to submit to formal arbitration under the terms of the MLA. The dispute in this case unquestionably falls within the scope of the grievance procedure set forth in the MLA because it involves a "question, complaint or dispute" concerning the MLA. *See* ¶ 5, *supra*. According to appellants, the phrase "will

---

[2]We need not address appellees' preemption argument because, even if correct, it would not divest this court of subject matter jurisdiction. *See Livadas v. Bradshaw*, 512 U.S. 107, 122, 114 S. Ct. 2068, 2077, 129 L. Ed. 2d 93, 109 (1994) ("§ 301 does not preclude state courts from taking jurisdiction over cases arising from disputes over the interpretation of collective-bargaining agreements" (CBA)); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 506, 82 S. Ct. 519, 522, 7 L. Ed. 2d 483, 486 (1962) (§ 301 of the Act "does not state nor even suggest" that federal courts have exclusive jurisdiction over cases involving interpretation of CBAs). In view of that fact and our disposition of this appeal on state-law grounds, we do not address appellees' contention, or the trial court's ruling, that § 301 of the Act, 29 U.S.C. § 185(a), preempted appellants' claims. *Compare Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (9th Cir. 2000) (no preemption when court did not need to interpret CBA's provision for payment of wages upon discharge because California statute overrode any contractual attempt to bargain away a nonnegotiable state-law right), *with Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495 (7th Cir. 1996) (considering Indiana wage law similar to A.R.S. § 23-351(C), court found state-law claim preempted because determination of when wages were due required interpretation of CBA); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881, 100 L. Ed. 2d 410, 418-19 (1988) (if resolution of state-law claim substantially depends on interpretation of CBA, claim is preempted); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-13, 105 S. Ct. 1904, 1911-12, 85 L. Ed. 2d 206, 214-16 (1985) (noting that "the meaning given a contract phrase or term [must] be subject to uniform federal interpretation").

be presented in writing" in the MLA means that TSOMO has "no discretion" and must present any grievance to the Executive Director. But that interpretation of the grievance and arbitration provision ignores its final phrase, which states, "or the same will be deemed waived." The MLA defines rights between TSS as employer and its employees, not between TSOMO and the employees it represents. The language in question, therefore, merely provides that all claims not presented in writing to the Executive Director will be deemed waived. Based on a plain reading of its language, we conclude that the MLA did not obligate TSOMO to bring all questions, complaints, or disputes to the Executive Director in writing.

¶15 Appellants also argue that TSOMO's decision not to present their grievance in writing breached its duty of fair representation. Because of that failure, appellants maintain, the trial court should have deemed their arbitration rights under the MLA exhausted, rather than waived. We agree with appellees, however, that appellants waived these issues and arguments by not adequately presenting them below in their complaint, in response to appellees' motions for summary judgment or in appellants' various post-judgment motions. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) (arguments raised for first time on appeal are untimely and, therefore, deemed waived).[3]

---

[3]Even had appellants not waived this claim, it is dubious. The law did not require TSOMO, as the exclusive collective bargaining agent for all employees, to process a grievance it determined, in good faith, to be without merit. *See Vaca v. Sipes*, 386 U.S. 171,

¶16　　In sum, the record and applicable law support the trial court's summary judgment ruling on the foregoing grounds. Therefore, we affirm the summary judgments entered in favor of appellees.

## II. Attorney fee awards

¶17　　In granting summary judgment in favor of appellees, the trial court also awarded them attorney fees both as a sanction under A.R.S. §§ 12-341.01(C) and 12-349, and as prevailing parties in a contract action under § 12-341.01(A). Later, however, the court vacated the sanction-based awards. Rather, based solely on § 12-341.01(A), the court ultimately awarded attorney fees to TSS and TSOMO in the amounts of $16,659.50 and $38,539 respectively, the precise amounts they had requested.

¶18　　Appellants contend the trial court "abused [its] discretion in awarding fees, and in granting fees in such huge sums based on the amount of work performed." An award of attorney fees is left to the sound discretion of the trial court and will not be reversed on

190-91, 87 S. Ct. 903, 916-17, 17 L. Ed. 2d 842, 857-58 (1967) (breach of duty of fair representation occurs only when union's conduct toward member of collective bargaining unit is "arbitrary, discriminatory, or in bad faith"; individual employee does not have absolute right to have meritless grievance taken to arbitration); *Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1222 (9th Cir. 2000) (no breach of duty of fair representation when union deliberates grievance and can provide explanation for its decision not to pursue it). The undisputed facts here reflect that TSOMO presented appellants' grievance to TSS in May 2001, and TSOMO provided an explanation for its decision not to pursue the claim in a letter to appellants in June, citing several legal opinions it received stating the MLA's twelve-month payment provision complied with state law. Finally, we deem unnecessary any remand of the case for the trial court to specifically determine whether appellants "exhausted or waived their arbitration rights," as appellants suggest.

appeal absent an abuse of discretion. *Rogus v. Lords*, 166 Ariz. 600, 603, 804 P.2d 133, 136 (App. 1991); *see also Rowland*, 199 Ariz. 577, ¶ 31, 20 P.3d at 1168. "We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it." *Hale v. Amphitheather School Dist. No. 10*, 192 Ariz. 111, 117, 961 P.2d 1059, 1065 (App. 1998); *see also Rowland*, 199 Ariz. 577, ¶ 32, 20 P.3d at 1168.

¶19    Our supreme court has prescribed the following pertinent factors courts should consider in determining whether to award fees under § 12-341.01(A): (1) the merits of the claim or defense the unsuccessful party presented; (2) whether the parties could have avoided or settled the litigation and whether "the successful party's efforts were completely superfluous in achieving the result"; (3) whether assessing fees against the unsuccessful party will cause an extreme hardship; (4) whether the successful party prevailed on all relief sought; (5) the novelty of the legal questions presented; (6) whether the claims or defenses had been previously adjudicated in Arizona; and (7) whether an award of fees would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

¶20    In challenging the fee awards, appellants focus primarily on factors (5), (6), and (7) above and contend the trial court "disregarded these legal principles." According to appellants, no fee award was appropriate here because they "pursu[ed] issues of substance

which have never been addressed by Arizona's appellate courts." Appellants also warn of the fee awards' "chilling effect on [their] pursuit of meritorious claims" involving "important wage claims and employment issues." The fee awards here, appellants argue, "threaten[] harm to [the] balance" of "competing interests" between employers and employees and trample the needed "sensitivity to keeping the playing field level when one type of litigant typically has less financial strength than another."

¶21     Appellants' arguments do not persuade us to overturn or modify the attorney fee awards. Although we have some concerns about the trial court's initial, procedural handling of appellees' fee requests and might not have awarded all of the fees the trial court did, we cannot say the fee awards are unsupported by any reasonable basis. *See Rowland*, 199 Ariz. 577, ¶ 32, 20 P.3d at 1168; *Hale*, 192 Ariz. at 117, 961 P.2d at 1065. And, because a reasonable basis exists for the award, we may not substitute our discretion for that of the trial court. *Associated Indem. Corp.*, 143 Ariz. at 571, 694 P.2d at 1185. Again, although reasonable minds might balance the *Associated Indemnity* factors differently, we cannot say the trial court abused its discretion in granting fees or in awarding the full amounts appellees requested.

¶22     Citing *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App. 1983), appellants also contend appellees' fee applications had inadequate time records, contained only broad summaries (or "block billing") of work performed, were inconsistent with each other, and reflected unnecessary "duplication of effort." The nature

13

of appellees' billing, appellants argue, "made it impossible for the trial court and [them] to analyze the reasonableness of time spent." According to appellants, the trial court "failed to heed the dictates of *China Doll*." We disagree.

¶23 "[C]ounsel should indicate the type of legal service provided, the date the service was provided, the attorney providing the service, . . . and the time spent in providing the service." *Id.* at 188, 673 P.2d at 932. Those requirements allow the court to determine whether the hours claimed are justified. Therefore, the fee application must contain sufficient detail so as to enable the court to assess the reasonableness of the time incurred. *Id.* The applications appellees filed below complied with *China Doll* and contained sufficient detail to support a reasonableness finding. And appellees adequately explained the alleged discrepancies in their respective services and bills. Again, we cannot say the trial court abused its discretion in awarding the fees requested.

¶24 Still relying on *China Doll*, appellants contend the fee award was excessive because appellees were not successful in all aspects of the litigation. As the court in *China Doll* stated, "[w]here a party has achieved only partial or limited success, . . . it would be unreasonable to award compensation for all hours expended, including time spent on the unsuccessful issues or claims." *Id*. at 189, 673 P.2d at 933. But appellants disregard the court's other statement in *China Doll* that, "where a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories." *Id*. Here, TSS and TSOMO clearly achieved the result sought in the litigation

14

by obtaining summary judgments on all grounds raised and, therefore, were successful under the *China Doll* standard. And that is so despite another trial judge's initial denial of appellees' motion for dismissal under Rule 12(b)(6), Ariz. R. Civ. P., particularly when appellants undertook no discovery or other development of their claims after that ruling.

¶25 Appellants' other arguments relating to the fee awards are unpersuasive. They contend the trial court did not adequately explain its analysis and resolution of each *Associated Indemnity* factor in awarding fees. But neither *Associated Indemnity* nor *Grand Real Estate, Inc. v. Sirignano*, 139 Ariz. 8, 676 P.2d 642 (App. 1983), which appellants cite, requires a court to set forth a detailed factual basis for a fee award. As long as the record reflects a reasonable basis for the award, we will uphold it.

¶26 Nor does a clear abuse of discretion emerge from the fact that the trial court initially awarded fees as sanctions before ultimately basing the awards solely on § 12-341.01(A). And, contrary to appellants' suggestion, that the trial court denied their motion for relief under Rule 60(c) does not show that the court "never considered [their] opposition to TSS's fee award on the merits." Before ultimately denying appellants' various post-judgment motions that challenged the attorney fee requests and awards, and after all briefing on that issue was complete, the trial court held a hearing on all pending motions and ordered supplemental briefing on insurance coverage issues. Only after that and after specifically noting that it had read all pertinent filings did the trial court deny appellants' Rule 60(c) motion and affirm the attorney fee awards. In view of that entire procedural sequence, that

15

the trial court initially ruled on appellees' fee requests before it received and considered appellants' objections thereto does not necessarily invalidate the awards ultimately made.

¶27 Finally, that some portions of appellees' attorney fee expense was covered by insurance does not preclude the fee awards to appellees or otherwise establish any abuse of discretion in those awards. *See Catalina Foothills Ass'n, Inc. v. White*, 132 Ariz. 427, 428, 646 P.2d 312, 313 (App. 1982); *see also Willcox v. Waldman*, 154 Ariz. 532, 538, 744 P.2d 444, 450 (App. 1987). Appellants cite no authority for a contrary proposition. Accordingly, the trial court's attorney fee awards to appellees are affirmed.

## DISPOSITION

¶28 The trial court's judgments, including the attorney fee awards, in favor of appellees are affirmed.[4] In our discretion, we deny appellees' requests for an award of attorney fees on appeal. *See Hale*, 192 Ariz. at 117, 961 P.2d at 1065.

                                                    _____
                                                    JOHN PELANDER, Chief Judge

CONCURRING:


_____

---

[4]Having found no error in the trial court's summary judgment ruling or its award of attorney fees to appellees, we also find no abuse of discretion in the court's denial of appellants' various post-judgment motions. *See Cervantes v. Rijlaarsdam*, 190 Ariz. 396, 402, 949 P.2d 56, 62 (App. 1997) (ruling on motion for new trial reviewed for clear abuse of discretion); *Delbridge v. Salt River Project Agric. Improvement & Power Dist.*, 182 Ariz. 46, 53, 893 P.2d 46, 53 (App. 1994) (ruling on Rule 60(c) motion to vacate and set aside judgment reviewed for clear abuse of discretion).

M. JAN FLÓREZ, Presiding Judge

_____
PHILIP G. ESPINOSA, Judge