NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LAKESIDE LUMBER PRODUCTS, INC., an Arizona corporation,
*Plaintiff/Counterdefendant/Appellee*,

*v.*

BENJAMIN R. MEYERS and ELSIE MEYERS, husband and wife,
individually and dba Northwest Reload,
*Defendants/Counterclaimants/Appellants*.

BENJAMIN R. MEYERS, an individual,
*Cross-Complainant/Appellant*

*v.*

JOHN BUSS, an individual; KATHLEEN JAN BUSS, an individual; and
KEVIN KEATING, an individual,
*Cross-Defendants/Appellees*

No. 1 CA-CV 15-0521
FILED 3-30-2017

Appeal from the Superior Court in Maricopa County
No. CV2011-015296
The Honorable John C. Rea, Judge

**AFFIRMED**

APPEARANCES

The Keating Law Firm, PLC, Scottsdale
By Kevin R. Keating
*Counsel for Plaintiff/Counterdefendant/Appellee*

Benjamin Meyers and Elsie Meyers, Eugene, OR
*Defendants/Counterclaimants/Appellants*

---

**MEMORANDUM DECISION**

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**B R O W N**, Chief Judge:

**¶1**         Benjamin and Elsie Meyers[2] appeal the trial court's judgment for breach of contract damages and attorney fees in favor of Lakeside Lumber Products, Inc.  For the following reasons, we affirm.

**BACKGROUND**

**¶2**         This litigation stems from a series of lumber sale transactions between Lakeside and Benjamin (doing business as Northwest Reload). The transactions involved an intermediary manufacturer, Whitsell Manufacturing, Inc., located in Oregon.  In 2009, Whitsell filed for Chapter 11 bankruptcy protection.  To allow Whitsell to continue its lumber remanufacturing operations, the bankruptcy court permitted Whitsell to operate as a debtor-in-possession and to enter into a business arrangement with Lakeside, which provided that Lakeside would finance Whitsell's operations by supplying raw lumber to Whitsell on credit.  Whitsell would then remanufacture the lumber and use the product to fill orders placed by

---

[1]         The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]         For ease of reference, we refer to Benjamin Meyers as "Benjamin," Elsie Meyers as "Elsie," and to both as "the Meyers."   Elsie Meyers was dismissed as a defendant in the trial court.  She does have an interest on appeal, however, in issues relating to the dismissal of her counterclaims.

its customers. Under the agreement, Lakeside retained ownership of the lumber until it received full payment for each shipment, and also assumed Whitsell's invoicing and payment collection rights. This arrangement was facilitated by Benjamin, who had a prior relationship with both Whitsell and Lakeside. In exchange for his work, Lakeside paid Benjamin commissions on many of the sales it made through Whitsell.

¶3　　　　During 2011, Benjamin made more than twenty purchases of lumber products from Whitsell, as evidenced by invoices issued by and paid to Lakeside. In September 2011, Lakeside filed a complaint in Maricopa County Superior Court alleging Benjamin had failed to pay four of the most recent invoices, totaling $41,207.98.[3] Counsel for the Meyers sought dismissal based on lack of personal jurisdiction, asserting the physical transactions were conducted between Northwest Reload and Whitsell exclusively within the state of Oregon. After briefing and oral argument, the trial court denied the motion, finding that Lakeside's "factual presentation [was] more credible" and the "record establishes that Defendants have engaged in regular and systematic business transactions with Plaintiff for nearly 18 years." The court concluded "[t]he facts support[ed] the assertion of both general and specific jurisdiction."

¶4　　　　After the trial court permitted counsel for the Meyers to withdraw, Lakeside sought summary judgment on its claim for breach of contract for nonpayment of the four invoices. In response, Benjamin filed an "Answer With Defenses and Counterclaims," including an allegation he was entitled to an offset of more than $180,000 in commissions Lakeside owed to him. Elsie filed a separate answer and counterclaim against Lakeside alleging intentional infliction of emotional distress based on Lakeside naming her and the Silvers in the lawsuit. The trial court denied Lakeside's summary judgment motion, stating it could not find as a matter of law that the four invoices cited by Lakeside were "unrelated to the broader financial relationship between the parties."

¶5　　　　Benjamin filed a motion to join Lakeside's principal, John Buss, his wife Kathleen Buss, and Lakeside's attorney, Kevin Keating, to the lawsuit. The court granted Benjamin's motion and he then filed a "cross-complaint" against Lakeside and the three newly-named parties. Lakeside,

---

[3]　　　The complaint also named Sanford Silver and his wife based on their alleged involvement in these transactions on behalf of Benjamin. Mr. and Mrs. Silver were eventually dismissed from the lawsuit and are not parties to this appeal.

the Busses, and Keating each filed motions for summary judgment on all of the claims contained in Benjamin's cross-complaint and in the Meyers' counterclaims. Following briefing and oral argument, the trial court granted each of the motions for summary judgment.

¶6 Following a one-day bench trial at which Benjamin represented himself, the trial court ruled in favor of Lakeside, reasoning that Benjamin acknowledged he made the lumber orders, they were delivered, he received payment from his buyer, but he did not pay for the ordered lumber. The court also found that Benjamin had failed to prove his affirmative defense, that he and Lakeside had entered into an agreement for payment of commissions on all transactions involving Whitsell. Benjamin then filed several other post-trial motions, including a motion for new trial, and Elsie filed a motion for sanctions. The court denied the motions. The court entered judgment in favor of Lakeside in the amount of $41,207.98, and awarded prejudgment interest (compounded quarterly) in the amount of $51,337, plus $71,552 in attorneys' fees and $959 in taxable costs. The Meyers timely appealed.

## DISCUSSION

¶7 In their appellate briefs, the Meyers attempt to raise a significant number of errors committed by the trial court. The briefing is deficient, however, in that it does not identify with any clarity the issues the Meyers intend to raise on appeal, nor does it include any meaningful citations to the record or arguments that are supported by relevant authorities. *See* Ariz. R. Civ. App. Proc. ("ARCAP") 13(a). Based on our review of the opening brief, we discern that the Meyers raise the following issues: (1) the court was biased against the Meyers; (2) the court erred in denying the jurisdictional motion; (3) the court erred in dismissing their counterclaims and Benjamin's crossclaims; and (4) the court made errors in the final judgment and improperly denied a motion for new trial. As best we can tell from the briefing, Elsie joins in her husband's arguments relating to bias and dismissal of her counterclaims.

## I.    Bias

¶8 The Meyers argue the trial judge was biased against them as out-of-state litigants and thus unfairly ruled in Lakeside's favor throughout the litigation. Arizona Rule of Civil Procedure 42.2 provides that a litigant may file an affidavit requesting a change of judge for cause. A litigant may request a change of judge for bias when the party "has cause to believe and does believe that on account of the bias, prejudice, or interest of the judge

he cannot obtain a fair and impartial trial." Ariz. Rev. Stat. ("A.R.S.") § 12-409. On the filing of the affidavit, the judge must "at once transfer the action to another division of the court . . . to preside at the trial of the action." A.R.S. § 12-409(A). The Meyers do not allege, and the record does not show, that they filed any such affidavit.

**¶9** Moreover, the portions of the record the Meyers cite in support of their bias claim are merely instances where the court ruled in the appellees' favor or found their evidence more credible. These are functions properly within the trial court's discretion and do not show actual bias against the Meyers. *See Pima Cty. Juv. Action, No. 63212-1*, 129 Ariz. 371, 375 (1981) ("The deference which appellate courts accord to the trier of fact . . . to make determinations based on assessments of the credibility of witnesses is elementary."); *Conkling v. Crosby*, 29 Ariz. 60, 77 (1925) (stating a party attempting to show a judge is biased must do more than "prove facts which in his opinion merely . . . show bias and prejudice, and must prove the *actual fact of bias, hostility, or ill will* of such a character as would prevent impartial justice being done") (emphasis added). Further, the record shows the trial judge was patient, tolerant and accommodating toward Benjamin's voluminous filings and arguments, with the judge ruling in the Meyers favor a number of times during the course of this extensive litigation. We therefore reject the Meyers' claim that the trial judge was biased.[4]

## II. Jurisdiction

**¶10** Benjamin argues the trial court lacked personal jurisdiction over him and should have granted his motion to dismiss the complaint on that basis. We review the trial court's ruling on the matter of personal jurisdiction de novo. *Duckstein v. Wolf*, 230 Ariz. 227, 233, ¶ 19 (App. 2012). "When a defendant challenges the existence of personal jurisdiction, the plaintiff must come forward with facts establishing a prima facie showing of jurisdiction, at which time the burden shifts to the defendant to rebut the showing." *Arizona Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493, ¶ 8 (App. 2010). The court should resolve any conflict in the evidence or filings in the

---

[4] The Meyers also assert the trial court erred in denying Elsie's request for sanctions against Lakeside and its attorney for maliciously naming her in the complaint. Whether to impose sanctions against a party is a function within the discretion of the trial court. Ariz. R. Civ. P. 11(C). The Meyers have not shown the court abused its discretion in declining to impose sanctions against Lakeside.

plaintiff's favor, and we defer to the court's determinations of credibility. *Id.*; *see also Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

**¶11**        Arizona courts may exercise personal jurisdiction over a non-resident defendant to the fullest extent allowed under the United States Constitution. Ariz. R. Civ. P. 4.2(a). Constitutional due process requires that a trial court determine the defendant has "minimum contacts" with the forum state before it can assert personal jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). There is no mechanical test or formula to follow in deciding whether personal jurisdiction exists; instead we must weigh the specific facts of each case to determine whether exercising personal jurisdiction would comport with notions of "fair play and substantial justice." *Williams v. Lakeview Co.*, 199 Ariz. 1, 3-4, ¶ 8 (2000) (internal quotations and citation omitted). Our jurisdictional analysis must examine the relationship among the defendant, Arizona, and the plaintiff's claim. *Id.* at 6, ¶ 17. Our inquiry is focused on whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. "[C]asual or accidental contacts by a defendant with the forum state, particularly those not directly related to the asserted cause of action, cannot sustain the exercise of specific jurisdiction." *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 266, ¶ 16 (2011).

**¶12**        Although the physical ordering and delivery of goods between Benjamin and Whitsell took place in Oregon, the evidence shows the financial side of the transaction was substantially between Benjamin and Lakeside. *See Williams*, 199 Ariz. at 3, ¶ 7 (noting "jurisdiction may arise without the defendant ever setting foot in the forum state"). Benjamin did not merely purchase goods from Whitsell ignorant of its relationship with Lakeside. To the contrary, Benjamin admitted in his motion to dismiss that he "coordinated" that relationship and even stood to financially benefit from it by receiving a fee from Lakeside for each sale it made of Whitsell lumber products. Benjamin's acts of facilitating that arrangement and negotiating his fee show purposeful, directed contact by Benjamin toward Lakeside in Arizona. *See Planning Grp. of Scottsdale, L.L.C.*, 226 Ariz. at 269, ¶ 32 (finding "purposeful direction" of business negotiations toward the forum state as a basis for personal jurisdiction).

**¶13**        Further, the exhibits Lakeside presented to rebut the motion to dismiss show a history of payments and direct communications between Benjamin and John Buss regarding the 2011 invoices. And John Buss explained in his affidavit that he began doing regular business with

Benjamin when Benjamin visited Arizona in 1994. Those business dealings resulted in Lakeside suing Benjamin in Arizona in 1996. Buss further asserted that Lakeside continued doing "a substantial amount of continuous business" with Benjamin "[d]uring the years between 1994 and the present," in hopes that Lakeside "could recoup some of the losses that it suffered when Benjamin and his businesses defaulted" on the 1994 payments.

¶14        Lakeside filed with the trial court "terms and conditions" that designated Arizona as the agreed-upon forum for legal action relating to the invoices. Lakeside asserted it presented these terms to Benjamin as recently as July 29, 2011. The terms are also referenced in every purchase order at issue in this case, which all occurred within a few months after Benjamin is said to have received the terms. This, coupled with the fact Benjamin had been successfully sued by Lakeside in an Arizona court in 1996, further shows he plainly understood that doing business with Lakeside could reasonably subject him to Arizona's jurisdiction again if he continued and/or resumed a similar business relationship. Even with that knowledge, according to John Buss, Benjamin continued his relationship with Lakeside for many years after the 1996 lawsuit, leading up to the instant case. Therefore, viewing the totality of the relationship between Lakeside and Benjamin, there were sufficient minimum contacts to establish general and specific personal jurisdiction. *See Planning Grp. of Scottsdale, L.L.C.*, 226 Ariz. at 269, ¶ 29 (stating "jurisdictional contacts are to be analyzed not in isolation, but rather in totality"); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (finding contract's choice-of-law provision sufficient to confer jurisdiction when reinforced by party's 20-year independent relationship with the forum state).

## III.    Dismissal of Counterclaims and Cross-Claims

¶15        In their respective answers and cross-complaint, the Meyers made claims against Lakeside, John Buss, Kathleen Buss, and Kevin Keating. The Meyers argue the court erred in granting the appellees' motions for summary judgment on these claims. Summary judgment should be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). "In reviewing a trial court's grant of summary judgment, we view the evidence most favorably to the party opposing summary judgment and determine de novo whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *United Servs. Auto. Ass'n v. DeValencia*, 190 Ariz. 436, 438 (App. 1997) (internal quotations and citation omitted). We will uphold the trial court's

ruling if it is correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

### a. Oral Contract, Fraud and Unfair Competition

**¶16** Claims one, two, three, eight, and ten of Benjamin's counterclaim against Lakeside, as well as counts four and six of the cross-complaint against the Busses, arise out of the alleged oral agreement between Benjamin and Lakeside concerning commissions for sales of Whitsell lumber products. The trial court properly concluded that these claims were barred by the statute of frauds. Arizona's statute of frauds provides that a party may not bring an action "[u]pon an agreement which is not to be performed within one year from the making thereof" unless it is memorialized in a signed writing. A.R.S. § 44-101(5). An oral contract that creates a permanent arrangement is necessarily incapable of being performed within one year. *Rudinsky v. Harris*, 231 Ariz. 95, 99, ¶ 18 (App. 2012).

**¶17** In Benjamin's "declaration" in opposition to the motion for summary judgment, he stated the oral contract was to continue for as long as Lakeside was "doing business" with Whitsell, with commission payments to Benjamin's wife continuing "in the unfortunate event [he] died." Even in his brief on appeal, Benjamin asserts his oral commission agreement with Lakeside was to continue "even after [his] death." Benjamin did not present to the trial court any signed written agreement, but instead urged the court to accept as proof his email to John Buss, which he alleges states the terms of their agreement. This evidence is inadequate under the statute, however, as it is not "signed by the party to be charged." *See* A.R.S. § 44-101. Thus, the court properly determined the alleged oral agreement was barred by the statute of frauds.

**¶18** Despite finding the oral contract unenforceable, the trial court nevertheless allowed Benjamin to present evidence of the agreement at the trial as an affirmative defense that Lakeside owed him more money than he owed on the invoices. Consistent with the testimony presented, the court found:

> Mr. Buss acknowledged the general nature of the commission arrangement with Mr. Meyers and a series of payments from Lakeside to Mr. Meyers. He differed significantly on the precise terms of the arrangement. Mr. Buss testified that any commission due Mr. Meyers was contingent on the profitability of the transaction to Lakeside and that Whitsell

became in default to Lakeside. The Court finds Mr. Buss's testimony to be credible.

We defer to the court's determination concerning the credibility of witnesses. *63212-1*, 129 Ariz. at 375. We therefore affirm the court's ruling as to Benjamin's breach of contract claims and requests for "accounting."

¶19        Count five of the cross-complaint alleged common law fraud against the Busses for failing to perform on their promises in the alleged oral agreement. For such a claim, a party must allege facts which, when taken as true, show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; and (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291-92, ¶ 14 (App. 2010).

¶20        Although Benjamin generally alleged the Busses made false promises regarding the alleged oral commission agreement, he failed to specifically state facts satisfying each of the elements of fraud. *See* Ariz. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). For example, he did not plead facts that would show the Busses had knowledge that the statements were false.

¶21        Claim nine of the counterclaim, titled "Fraud, with Intentional Harm," similarly fails to state a claim under the elements of the tort. This claim alleges John Buss asked Whitsell to falsify its records to "reflect all sales are a 'custom run' service and not factoring," thereby "cheating" Benjamin out of commissions that would have been owed to him on the factoring orders. These bare allegations do not meet each of the elements of fraud. *See Comerica Bank*, 224 Ariz. at 291-92, ¶ 14.

¶22        Count three of the cross-complaint is titled "Unfair Competition" and repeats the facts alleged in the fraud allegation discussed above. As the trial court properly noted, the tort of unfair competition encompasses theories such as "trademark infringement, false advertising . . . and misappropriation." *Fairway Constructors v. Ahern*, 193 Ariz. 122, ¶ 9 (App. 1999). Such claims typically involve a company using a similar or

previous name of another company in order to confuse the public. *See Taylor v. Quebedeaux*, 126 Ariz. 515, 517 (1980). Benjamin did not allege any facts which would meet the requirements of this tort.

### b. Defamation and Wrongful Interference with Contract

**¶23** Count one of Benjamin's cross-claim and claim six of his counterclaim alleged defamation based on a letter Keating sent to Stimson Lumber and another vendor with whom Benjamin had a business relationship. The September 13, 2011 letter states that Benjamin owed money to Lakeside both on a past judgment and on recent business dealings. Benjamin's defamation claim centered on his argument that Keating and the Busses knew the prior judgment referenced in the letter had been paid in 2000 and expired in 2001. Benjamin asserted he suffered damages because this alleged misrepresentation caused him to lose business with the companies that received the letters.

**¶24** We agree with the trial court's well-reasoned determination that Keating's letter to Stimson Lumber is subject to absolute privilege. "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding[.]" Restatement (Second) of Torts § 586 (1977). To qualify for the privilege, an allegedly defamatory publication "must relate to, bear on or be connected with the proceeding." *Green Acres Trust v. London*, 141 Ariz. 609, 613 (1984). "The defamatory content of the communication need not be 'strictly relevant,' but need only have 'some reference to the subject matter of the proposed or pending litigation . . . .'" *Id.* (quoting Restatement (Second) of Torts § 586, cmt. c (1977)).

**¶25** Here, the letter to Stimson Lumber is dated just six days before Lakeside filed its complaint on the amounts it alleged Benjamin owed on the unpaid invoices. The letter encouraged Stimson to withhold payment to Benjamin in anticipation of "garnishment or attachment proceedings" which may become "necessary against [Benjamin's] accounts receivables and other assets . . . in the near future." The letter was written in good faith in contemplation of the instant litigation and thus qualifies for the absolute privilege. *See* Restatement (Second) of Torts § 586, cmt. e (1977) (stating the privilege applies "only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration"). Therefore, the trial court correctly granted summary judgment on Benjamin's defamation claim.

¶26 The September 13, 2011 letter also formed the basis for claims four and five of Benjamin's counterclaim and count two of the cross-complaint alleging wrongful interference with a contract. Because Keating committed no improper action in sending the letter to Benjamin's vendors, the court properly disposed of these claims. *See Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 483 (App. 1988) (listing "improper action on the part of the defendant" as required element of the tort of intentional interference with a contract).

### c. Intentional Infliction of Emotional Distress

¶27 In their respective counterclaims, Benjamin and Elsie each alleged a claim for intentional infliction of emotional distress against Lakeside for causing stress in their marriage and in their relationship with the Silvers by filing complaints against them. This tort requires extreme and outrageous conduct by the defendant, with the intent of causing emotional harm, and the actual manifestation of severe emotional distress. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987). Extreme and outrageous conduct is conduct that exceeds the bounds of social decency or expectation. *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 304 (App. 1988). The Meyers have not pled any facts showing Lakeside's actions were outrageous or extreme. Further, neither Benjamin or Elsie presented any evidence of severe emotional distress. *See Ford*, 153 Ariz. at 43. The court properly granted summary judgment on these claims.

## IV. Final Judgment

¶28 Benjamin disputes the trial court's final judgment on Lakeside's complaint, claiming it rewarded Lakeside for "using false declarations and statements." Benjamin appears to repeat the defense he asserted during trial, that his dealings were strictly with Whitsell and not with Lakeside. When reviewing a judgment, we view the evidence in the light most favorable to sustaining the court's decision. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, ¶ 11 (App. 2009). "We will not reweigh the evidence or substitute our evaluation of the facts," but will uphold the court's ruling unless it is clearly erroneous and unsupported by substantial evidence in the record. *Id.* at 51-52.

¶29 Lakeside's complaint, filed in September 2011, made a single claim for breach of contract based on four invoices for lumber products it alleged Benjamin received but never paid for, totaling $41,207.98. "[I]n an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages."

*Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30 (App. 2004). Lakeside presented to the trial court the unpaid invoices and John Buss' testimony that Benjamin had received the product but had failed to pay the amounts owed. Buss further testified that, although Benjamin placed his orders with Whitsell, Benjamin knew from their prior dealings that ordering from Whitsell meant buying from Lakeside. Lakeside presented as evidence of these prior dealings several earlier invoices, copies of checks from Benjamin to Lakeside, and email communications between Benjamin and Buss regarding the payments. Thus, substantial evidence supports the court's judgment on Lakeside's contract claim.

**¶30**        Benjamin also claims the trial court's award of attorneys' fees to Lakeside was "excessive" because Lakeside's attorney "never charges over $150.00 per hour for his legal service." Whether to award attorneys' fees is "left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004); A.R.S. § 12-341.01(A) ("In any contested action arising out of a contract . . . the court may award the successful party reasonable attorney fees."). We will not disturb a fee award unless there is no reasonable basis for it. *Orfaly*, 209 Ariz. at 265, ¶ 18. Here, Lakeside prevailed on the underlying judgment following more than three years of litigation. Moreover, Benjamin's assertion regarding Lakeside's attorneys' rate for services is completely unsupported. Also, the court noted it had expected to see a much larger fee request from Lakeside, given that Benjamin had so "expanded the scope of the litigation" with his "massive amount" of unsuccessful pleadings. The court acted well within its discretion in determining the amount of the fee award.

**¶31**        Benjamin also challenges the court's award of prejudgment interest. "A creditor is entitled to interest on his claim prior to judgment, provided the sum demanded is liquidated." *Costanzo v. Stewart Title & Trust of Phoenix*, 23 Ariz. App. 313, 317 (1975). A claim of interest is liquidated "if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness[.]" *Id.* A prevailing party's award of prejudgment interest is not a matter of discretion, but a matter of right. *Id.* Here, the terms and conditions referenced in the Lakeside invoices specified the "service charge" on unpaid balances is "2 percent per month," which is consistent with the court's award. We therefore find no error.

## V.    Motion for New Trial

¶32    Benjamin argues the court erred in denying his motion for new trial.  Whether to grant or deny a motion for new trial is a decision within the discretion of the trial court.  *Thompson v. Quandt*, 83 Ariz. 343, 346 (1958).  Benjamin asserts the court "forced" him to rest his case despite the fact he had told the court he had more evidence he wanted to present.  The record before us does not reveal any request from Benjamin to extend the trial another day or to call further witnesses from his witness list.  Also, when the court inquired at the end of the trial whether Benjamin had "any more evidence," he simply replied "I think you've heard a lot today."  Benjamin also argues the court denied his motion out of "bias" but as noted above he has failed to establish any viable claim of bias. *See supra* ¶¶ 8-9.  Finally, Benjamin has made no showing on appeal as to what the additional witnesses would have presented that could have changed the outcome of the trial.  We find no abuse of discretion in the court's decision to deny the motion for new trial.

## VI.    Attorneys' Fees and Sanctions

¶33    The Meyers request sanctions, costs, and "legal expenses" against Lakeside.  Because they have not prevailed on appeal, we deny this request.  Lakeside also requests its attorneys' fees and costs under the contract and under A.R.S. § 12-341.01, as well as sanctions against the Meyers pursuant to ARCAP 25 for filing a frivolous appeal.  In our discretion, we award Lakeside its reasonable attorneys' fees under A.R.S. § 12-341.01, plus taxable costs, subject to compliance with ARCAP 21.  We deny Lakeside's request to impose sanctions against the Meyers.

## CONCLUSION

¶34    For the foregoing reasons, we affirm the trial court's final judgment and all rulings related thereto.



AMY M. WOOD • Clerk of the Court
FILED:  AA